No. 24-13298

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

—————————————

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee,*

*v.*

**JULIE CHRISLEY,**
*Defendant—Appellant.*

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
THE HONORABLE ELEANOR L. ROSS, DISTRICT JUDGE
CASE NO. 1:19-cr-00297-ELR-JSA

—————————————

## APPELLANT'S OPENING BRIEF

—————————————

J. ALEX LITTLE
ZACK C. LAWSON
LITSON PLLC
54 Music Square East, Suite 300
Nashville, Tennessee 37203
(615) 985-8205
alex@litson.co
zack@litson.co
*Counsel for Defendant-Appellant*

December 20, 2024

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), the following people and entities have an interest in the outcome of this appeal:

| | |
|---|---|
| Anand, Honorable Justin S. | Regions Bank (RF) |
| Anulewicz, Christopher S. | RES-GA (Integrity/Haven) |
| Buchanan, Ryan K. | Ross, Eleanor L. |
| Candence Bank (BCB) (CADE) | Samuel, Donald F. |
| Chrisley, Julie | Security Bank (SECB) |
| Chrisley, M. Todd | Sistla, Alex R. |
| Clarkson, John T. | Sneed, Sekret T. |
| Erskine, Kurt R. | Sommerfeld, Lawrence R. |
| Georgia Department of Revenue | SouthState (Midtown) (SSB) |
| Griffin, Daniel P. | Sponseller, Alex F. |
| Jacobs, Julie A. | Stearns Bank (ABT) (SFSI) |
| Jones, Vivieon K. | Synovus, Bank (AFBT) (SNV) |
| Krepp, Thomas J. | Tarantino, Peter |
| Lawson, Zachary C. | Thompson, Brenton |
| Leach, Arthur W. | Truist (Haven) (TFC) |
| Little, J. Alex | United Community Bank (UCBI) |
| Morris, Bruce H. | United States of America |
| Pak, Byung J. | Vey, Alexander C. |
| Peters, Annalise K. | Why, John J. V. |
| Ramey, E. Travis | Wilson, Laurabeth |

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument under Federal Rule of Appellate Procedure 34(a) and Rule 28-1(c) of the Eleventh Circuit Rules.

Given the unique nature of the case and the facts, some of which arose after remand, the Appellant believes that oral argument will provide valuable clarity to the Court in deciding the appeal.

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PERSONS AND
     CORPORATE DISCLOSURE STATEMNT ...................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................. ii

TABLE OF CONTENTS ............................................................... iii

TABLE OF AUTHORITIES ........................................................... v

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF THE ISSUES ................................................... 2

STATEMENT OF THE CASE .................................................... 3

    A.   Nature of the Case ..................................................... 3

    B.   Course of Proceedings ............................................... 5

    C.   Statement of Facts .................................................... 7

    D.   Standard of Review ................................................... 12

    E.   Appellant's Bail Status .............................................. 12

SUMMARY OF THE ARGUMENT ......................................... 13

ARGUMENT ........................................................................ 15

    I.   Mrs. Chrisley Received a Retaliatory Sentence ...................... 16

        a. A Presumption of Vindictiveness Applies. .................. 16

        b. There is Nothing in the Record to Overcome
     the Presumption of Vindictiveness. ............................. 19

# TABLE OF CONTENTS
## (cont.)

Page(s)

c. The Record Shows Actual Vindictivenes. .................... 21

d. The Appropriate Remedy is Resentenicng
Before a Different Judge. ............................................. 22

II.   The Court Did Not Consider the Changed Sentencing
Guidelines .................................................................. 26

CONCLUSION ........................................................................ 28

CERTIFICATE OF COMPLIANCE ....................................... 30

CERTIFICATE OF SERVICE ............................................... 31

iv

# TABLE OF AUTHORITIES

<u>CASES</u>                                                              <u>Page No.</u>

*Alabama v. Smith,*
    490 U.S. 794 (1989) ................................................................. 15-17

*Brooks v. Central Bank of Birmingham,*
    717 F.2d 1340 (11th Cir. 1983) ...................................................... 22

*Brecht v. Abrahamson,*
    507 U.S. 619 (1993) ...................................................................... 25

*Gall v. United States,*
    552 U.S. 38 (2007) ........................................................................ 26

*Liteky v. United States,*
    510 U.S. 540 (1994) ...................................................................... 22

*Macomber v. Hannigan,*
    15 F.3d 155 (10th Cir. 1994) ........................................................ 25

*Peugh v. United States,*
    569 U.S. 530 (2013) ...................................................................... 26

*North Carolina v. Pearce,*
    395 U.S. 711 (1969) ................................................................. 15-16

*Rock v. Zimmerman,*
    959 F.2d 1237 (3d Cir. 1992) ....................................................... 20

*Texas v. McCullough,*
    475 U.S. 134 (1986) ...................................................................... 25

*United States v. Anderson,*
    440 F.3d 1013 (8th Cir. 2006) ...................................................... 25

# TABLE OF AUTHORITIES
## (cont.)

<u>CASES</u>                                                                 <u>Page No.</u>

*United States v. Andrade-Castillo,*
    618 F. App'x 879 (9th Cir. 2015) ................................................ 15-16

*United States v. Chau,*
    426 F.3d 1318 (11th Cir. 2005) ...................................................... 12

*United States v. Cheek,*
    3 F.3d 1057 (7th Cir. 1993) ........................................................... 12

*United States v. Curtin,*
    558 F.3d 993 (9th Cir. 2009) .......................................................... 17

*United States v. Hodge,*
    559 F. App'x. 43 (2d Cir. 2014) ..................................................... 17

*United States v. Mazzaferro,*
    865 F.2d 450 (1st Cir. 1989) .......................................................... 24

*United States v. Newman,*
    6 F.3d 623 (9th Cir. 1993) ............................................................. 25

*United States v. Perez,*
    904 F.2d 142 (2d Cir. 1990) ........................................................... 25

*United States v. Rapal,*
    146 F.3d 661 (9th Cir. 1998) .................................................... 17, 20

*United States v. Torkington,*
    874 F.2d 1441 (11th Cir. 1989) ................................................. 22-23

*Wasman,*
    468 U.S. 559 (1984) ...................................................................... 19

# TABLE OF AUTHORITIES

## <u>FEDERAL STATUTES</u> <span style="float:right"><u>Page No.</u></span>

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3742 ........................................................................ 1

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 2106 ........................................................................ 1

## <u>OTHER AUTHORITIES</u> <span style="float:right"><u>Page No.</u></span>

*Official Update on Todd & Julie Chrisley's Federal Appeal*, Unlocked
    with Savannah Chrisley, YOUTUBE, at 19:30 (Apr. 16, 2014),
    https://www.youtube.com/watch?v=it2ZC8p0o4I ............................................. 8

Unlocked with Savannah Chrisley, YOUTUBE, (Sept. 17, 2024)
    https://www.youtube.com/watch?v=D4ksL7mFrqI;
    *Julie's Resentencing is Tomorrow . . .* , Unlocked with Savannah
    Chrisley, YOUTUBE,  (Sept. 24, 2014),
    https://www.youtube.com/watch?v=netpLX6iu3A ............................................. 9

*Official Update on Todd & Julie Chrisley's Federal Appeal*,
    Unlocked with Savannah Chrisley, YOUTUBE, (Apr. 16, 2014),
    https://www.youtube.com/watch?v=it2ZC8p0o4I; *'Outhouse to
    Whitehouse' (ft. Alice Marie Johnson* ................................................. 9

*'Outhouse to Whitehouse' (ft. Alice Marie Johnson)*, Unlocked with
    Savannah Chrisley, YOUTUBE, (Sept. 17, 2024)
    https://www.youtube.com/watch?v=D4ksL7mFrqI ......................................... 10

PBS NewsHour, *WATCH: Savannah Chrisley speaks at 2024
    Republican National Convention | 2024 RNC Night 2*,
    YOUTUBE, (July 16, 2024),
    https://www.youtube.com/watch?v=KdMxsXAFpeU ....................................... 21

## STATEMENT OF JURISDICTION

The district court had original jurisdiction over this criminal prosecution under 18 U.S.C. § 3231, and it entered its amended judgment against the appellant on September 30, 2024. (Doc. 444.)

Julie Chrisley filed a timely notice of appeal on October 10, 2023. (Doc. 446.)

This Court's appellate jurisdiction arises from 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

On direct appeal, this Court vacated Mrs. Chrisley's sentence. On remand, her loss amount was reduced from $17 million to $4.7 million, resulting in a significant reduction in the Guidelines. At resentencing, the district court acknowledged that the reasons for the downward variance it previously gave were still present. But, notwithstanding all this, the court gave her a *harsher* sentence, imposing the same term of imprisonment but extending her supervised release term by two years. It gave no reason for the harsher sentence. Instead, the court spent more time admonishing Mrs. Chrisley's daughter, who was in the courtroom, for public statements she made critical of the case, which the court learned about off the record. These facts raise the following issues:

I.      Whether the district court violated Mrs. Chrisley's due process rights when it retaliated against her after her successful appeal by giving her a harsher sentence at resentencing; and

II.     Whether the district court erred by failing to consider the Guidelines at re-sentencing when it gave a harsher sentence despite a significantly reduced Guidelines Range and no change in facts that the court previously held warranted a downward variance.

2

## STATEMENT OF THE CASE

### A. Nature of the Case

The first time Julie Chrisley was sentenced, the district court sentenced her to a below-Guidelines sentence of 84 months in prison followed by three years of supervised release. But this sentence was based on a wildly inaccurate loss amount of more than $17 million. Because there was no evidence to support this amount, this Court vacated her sentence and remanded for resentencing. On remand, the government conceded that the appropriate loss amount was about $4.7 million. In turn, Mrs. Chrisley's Guidelines Range was reduced by more than 43 months on the low end and 54 months on the high end: from a range of 121 to 151 months to a range of 78 to 97 months.

At resentencing, the trial court spent almost no time addressing this drastic change in Guidelines or grappling with the various sentencing factors. It did, however, acknowledge that the reasons underlying its original downward variance were still present. The court, instead, spent significant time addressing public statements made by Mrs. Chrisley's daughter, Savannah Chrisley, who has been critical of the case against her parents on her podcast and when she spoke at the

3

Republican National Convention. The court implied that she made the statements for podcast and TV ratings, and that she was not considering the well-being of the children now in her care since her parents' incarceration. The court also took issue with Savannah's public statements about the physical conditions at her mother's BOP facility, implying that Mrs. Chrisley's participation in prison programs somehow refuted Savannah's public claims about Mrs. Chrisley's conditions. None of this was in the record. None of this was raised by either party. And none of this was appropriate to consider at sentencing. Nevertheless, after scolding Savannah for her public comments, the court gave Mrs. Chrisley a harsher sentence—the same 84 months in prison plus a two-year extension of supervised release (from three years to five years).

Nothing in the record or the court's explanations supported a harsher sentence. In fact, the opposite is true. Mrs. Chrisley's Guidelines were greatly reduced. And the court saw evidence that she has been a model inmate. The hearing and sentence can only leave one impression to any reasonable observer: the sentence was vindictive.

## B. Course of Proceedings

On August 13, 2019, a federal grand jury indicted Todd and Julie
Chrisley for bank fraud, wire fraud, tax evasion, and various counts of
conspiracy. (Doc. 1.) The indictment also charged their accountant, Peter
Tarantino, with tax crimes. (*Id*.) Two and half years later, on February
15, 2022, the grand jury issued a superseding indictment. (Doc. 130.) The
new indictment charged Julie with one separate count of obstruction of
justice. (*Id*.)

Trial began on May 16, 2022, and ended on June 7, 2022. (Doc. 208;
Doc. 229.) At the close of trial, the jury found Todd and Julie Chrisley
guilty on all counts. (Doc. 228.) On December 5, 2022, the trial court
entered its judgment, sentencing Mrs. Chrisley to 84 months of
imprisonment and three years of supervised release. (Doc. 338.) The
judgment included an order of restitution in the amount of
$17,270,741.57. (*Id*.) The court subsequently entered an order requiring
the Mr. and Mrs. Chrisley to forfeit the same amount to the United
States. (Doc. 347.)

That same day, Mrs. Chrisley timely filed her notice of appeal. (Doc.
340.) This Court ruled on Mrs. Chrisley's appeal several months later,

affirming the district court on all issues except for the loss amount attributed to Mrs. Chrisley. (Doc. 415.) On this issue, it found there was no evidence in the record that Mrs. Chrisley was responsible for the entire loss amount of the bank-fraud conspiracy, which started in 2006. (*Id.*) The Court only found evidence tying Mrs. Chrisley to the conspiracy starting in 2007, which was after the bulk of the fraudulent loans were made. (*Id.* at 42-43.) The Court remanded to the district court to "make factual findings about when Julie's involvement in the conspiracy began, and if it concludes Julie's involvement started in 2006, it should identify the evidence on which it bases its finding." (*Id.* at 44.)

On remand, and before resentencing, the parties agreed to a significantly reduced loss amount of $4.7 million, resulting in the Guidelines Range dropping by more than one third—from 121 to 151 months to 78 to 97 months. Despite this drastic change, on September 30, 2024, the trial court resentenced Mrs. Chrisley to 84 months of imprisonment and five years of supervised release. (Doc. 444.) The judgment included an order of restitution in the amount of $4,740,645.04. (*Id.*) The court also entered an order for forfeiture of the same amount. (Doc. 442.)

C. **Statement of the Facts**

At the resentencing hearing on September 25, 2024, the government claimed that the initial 84-month sentence remained appropriate despite the lower loss amount. (*Id*. at 6.) Defense counsel, on the other hand, argued that the significant reduction in the loss amount, the lower offense level, the reduced Guidelines Range, and the two-point reduction for her zero-point offender status all warranted a corresponding reduction in sentence. (*Id*. at 21.)

In addition to the reasons that compelled the court to impose a significant downward variance at Mrs. Chrisley's original sentencing, defense counsel argued that Mrs. Chrisley's lack of criminal history, combined with her exemplary behavior while incarcerated—including numerous rehabilitative program certifications—demonstrated her ability to reintegrate into society and supported a sentence below the Guidelines Range. (Doc. 445 at 22.)

The district court did not engage substantively with any of these arguments. At the conclusion of defense counsel's argument, the trial court made its first reference to *ex parte* information it had apparently learned about Savannah Chrisley's podcast. Specifically, the court

referred to Savannah's public statements[1] about her mother's prison conditions, implying that Mrs. Chrisley's participation in prison programs contradicted Savannah's public, out-of-court claims about the prison's poor conditions:

> Before you step away, because you did [supply prison] certificates… that were presented to the court. And I didn't know earlier that I reviewed them. So it sounds like there have been many opportunities for Ms. Chrisley to take advantage of while she's been in custody ***which is a little different from what I thought from some of the stuff I've seen about these facility conditions.*** But it sounds like she's got many opportunities to do good things.

(Doc. 445 at 24) (emphasis added).

Defense counsel responded that the concerns about prison conditions were health related and distinct from the programming that is available at the facility. (*Id.* at 25.) The court retorted that those facts were not in the record, which was odd because it was the court—not defense counsel—that raised the issue. (*Id.*)

As it turned out, the court's comment was not an isolated incident expressing some minor frustration with Savannah's public statements, though that would be improper on its own. What became clear is that the

---

[1]    *Official Update on Todd & Julie Chrisley's Federal Appeal*, Unlocked with Savannah Chrisley, YᴏᴜTᴜʙᴇ, at 19:30 (Apr. 16, 2014), https://www.youtube.com/watch?v=it2ZC8p0o4I.

court was unhappy with a variety of Savannah's statements[2] about the case itself. The court next accused Savannah, who now has custody of two minor children formerly in her parents' custody, of making false statements about the case on her podcast and TV, which the court said would be harmful to the children:

> And what I would say to any adult who is entrusted with the care and supervision of a young child and who is putting false, misleading inaccurate information out there into the universe, that information is going to make its way back to that young child, because even if you aren't saying it directly to that child, children find their way to the internet, and others talk. And it doesn't take a licensed therapist like the one who wrote me letters to recognize that, once that child discovers the reality and that what he or she has been told is not what's really going on in the case and is not accurate in terms of when mommy and daddy are coming home, it's such a significant letdown that it is a serious risk to that child's emotional and mental well-being, the same well-being that I am being asked to consider.

> And so what I would say to anybody involved in this who is responsible for the care of these children at issue we're talking about so much here is, I hope that you are concerned with their well-being, not with any TV ratings, podcast audiences, anything, but with their well-being so that you are, first of all, being honest with

---

[2]    *Official Update on Todd & Julie Chrisley's Federal Appeal*, Unlocked with Savannah Chrisley, YOUTUBE, (Apr. 16, 2014), https://www.youtube.com/watch?v=it2ZC8p0o4I; *'Outhouse to Whitehouse' (ft. Alice Marie Johnson)*, Unlocked with Savannah Chrisley, YOUTUBE, (Sept. 17, 2024) https://www.youtube.com/watch?v=D4ksL7mFrqI; *Julie's Resentencing is Tomorrow . . .* , Unlocked with Savannah Chrisley, YOUTUBE, (Sept. 24, 2014), https://www.youtube.com/watch?v=netpLX6iu3A.

them about what has happened in this case and teaching them how to be good people. Truthful people that don't cheat, that don't steal, that understand, when you engage in wrongdoing, there are consequences, whether you're a child or an adult. That's important.

(Doc. 445 at 32-33.)

These criticisms were no doubt directed at Savannah, who was present in the courtroom and has a popular podcast, called "Unlocked with Savannah Chrisley," where she frequently discusses her parents' case and has, at times, criticized the trial court's handing of the case.[3] Savannah also spoke about the case and her belief in her parents' innocence on television once: in a speech at the 2024 Republican National Convention. This perhaps is why the trial court referenced "TV ratings."

After expressing its dissatisfaction with Savannah, the court swiftly moved to sentencing. The court said that its initial decision to grant a downward variance "was not directly connected to a precise loss amount or number of years in the conspiracy." (*Id*. at 33.) Rather, it felt the previously calculated Guidelines were "way higher than what Mrs. Chrisley deserved" considering "Mrs. Chrisley's age and health and the

---

[3] *'Outhouse to Whitehouse' (ft. Alice Marie Johnson)*, Unlocked with Savannah Chrisley, YOUTUBE, (Sept. 17, 2024) https://www.youtube.com/watch?v=D4ksL7mFrqI.

fact that she was a caretaker for elderly and children. . .” (*Id.* at 33-34.)
The court acknowledged that these same reasons still applied:

> None of that has changed. Everything that I took into account is still the same. Everything that I based my downward variance on is the same.

(*Id.* at 34.)

The court then paid lip service to the Guidelines before saying that its prior variance had nothing to do with the loss amount: “Although I completely accept the findings of the court of appeals, and we do need to have accurately calculated guidelines, but my downward variance was not tied to the loss amount or the number of years in the conspiracy.” (*Id.*)

Nonetheless, it imposed a sentence of 84 months’ imprisonment followed by five years of supervised release—the same length of imprisonment as Mrs. Chrisley’s original sentence and an *additional* two years of supervised release. (*Id.* at 34.)

Defense counsel raised multiple objections. First, counsel objected to the court’s failure to consider the new Guidelines. (*Id.* at 37.) Second, defense counsel objected to the sentence, which was harsher than Mrs. Chrisley’s original sentence despite the lowered Guidelines Range, as “retaliatory.” (*Id.*) And third, defense counsel objected to the trial court’s

apparent reference to statements by Mrs. Chrisley's daughter, Savannah, on her podcast because any such information from the podcast was not formally entered into the record and should not influence sentencing. (*Id*.)

The court responded to this objection by stating, "I have not considered any podcasts or anything in terms of the sentence. That was a comment referencing the children, because the children have been referenced here, and the person to whom that was directed wrote this Court a letter for consideration during this sentencing." (*Id*. at 37.) This response again reflected that the court was referring to Savannah's public statements. (*Id*. at 37-38.)

### D. Standard of Review

This Court "review[s] constitutional challenges to a sentence *de novo*." *United States v. Chau*, 426 F.3d 1318, 1321 (11th Cir. 2005).

### E. Appellant's Bail Status

Julie Chrisley is currently incarcerated pending this appeal.

## SUMMARY OF THE ARGUMENT

The district court sentence was vindictive. Mrs. Chrisley won her direct appeal because the district court improperly sentenced her for the entire scope of the alleged conspiracy. On remand, the parties agreed to reduce the loss amount by over $12 million to reflect this fact, and her Guidelines were significantly reduced. Yet the district court responded with a harsher sentence. Specifically, it gave her the same amount of prison time plus an additional two years of supervised release.

The district court provided no rationale for the harsher sentence. The sentence was therefore presumptively vindictive. And there is nothing in the record to overcome this presumption. To the contrary, the district court acknowledged that all the reasons why it gave a significant downward variance previously still applied. This Court should vacate her sentence and reassign the sentencing to a different judge on remand.

Even setting aside this presumption, Mrs. Chrisley is entitled to the same relief because the district court showed actual bias. At resentencing, the court scolded Mrs. Chrisley's daughter Savannah for public statements she made about the case on her podcast and on television. The court also took issue with public statements Savannah

made about the poor conditions at her mother's prison. This information was obtained *ex parte*, and it was not in the record. And Savannah's public statements about the case—which are protected by the First Amendment—are irrelevant to her mother's sentencing. With no other reason to give Mrs. Chrisley a harsher sentence, and considering the court's focus on Savannah's statements at the hearing, any reasonable observer would conclude, at the very least, that the district court was potentially biased.

In addition, the district court committed procedural error by failing to consider the Guidelines. At resentencing, the court explained that its significant downward variance in Mrs. Chrisley's original sentence was not related to the loss amount and was related only to factors that had not changed. Yet, despite a reduction of about 35% to the Guidelines Range, the court declined to give a downward variance and gave the same prison sentence plus additional time on supervised release. In doing so, the court improperly gave the Guidelines no consideration.

As a result, this Court should again vacate Mrs. Chrisley's sentence and reassign her resentencing to a different judge to maintain the appearance of impartiality.

## ARGUMENT

Mrs. Chrisley received a vindictive and unfair sentence from a judge personally biased against her and her family. Justice demands that Mrs. Chrisley be resentenced before a new judge to preserve the appearance of an impartial, fair judiciary in the eyes of Mrs. Chrisley, other criminal defendants, and members of the public.

### I.    Mrs. Chrisley Received a Retaliatory Sentence.

The Constitution's Due Process Clause protects defendants from a retaliatory sentence upon their successful appeal of their conviction. *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *partially overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). This protection is critical so that the defendant is not deterred from exercising her right to appeal out of fear that the sentencing judge will retaliate against her if she succeeds. *Id.*

Following Mrs. Chrisley's successful appeal of her original sentence, the court violated her due process rights by retaliating against her with a harsher sentence. Specifically, on resentencing, Mrs. Chrisley received a zero-point offender reduction and a drop in the loss amount from more than $17 million to around $4.7 million—a reduction of more

than 70% of the original loss amount. Her Guidelines were accordingly reduced from a range of 121 to 151 months to a range of 78 to 97 months. Yet, on remand, the district court resentenced her to 84 months of confinement, followed by five years of supervised release—the same period of incarceration followed by a two-year increase in supervised release. No new facts justified a harsher sentence, and the court did not point to any justification. On the contrary, the court noted that all the reasons it previously held entitled Mrs. Chrisley to a downward variance in her original sentence were still present.

### a. A Presumption of Vindictiveness Applies.

To guard against the risk of vindictive resentencing, the Supreme Court in *Pearce* adopted a prophylactic rule under which a presumption of vindictiveness arises if two conditions are present: (1) the sentencing judge "imposes a more severe sentence" upon resentencing; and (2) no non-vindictive reasons for doing so "affirmatively appear" in the record. 395 U.S. at 726; *see also Smith*, 490 U.S. at 798. If those two conditions are met, "a presumption arises that [the] greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted

by objective information justifying the increased sentence." *Smith*, 490 U.S. at 798-88.

Both conditions are present here.

*First*, Mrs. Chrisley's sentence on remand is more severe because the district court gave her two additional years of supervised release. Notably, for the presumption to apply, the increased sentence need not be a sentence of confinement; courts have considered vindictiveness in increased terms of supervised release and probationary sentences as well. *See, e.g., United States v. Andrade-Castillo*, 618 F. App'x 879, 881 (9th Cir. 2015); *United States v. Curtin*, 558 F.3d 993, 998 (9th Cir. 2009); *United States v. Hodge*, 559 F. App'x. 43 (2d Cir. 2014); *United States v. Rapal*, 146 F.3d 661, 663 (9th Cir. 1998).

In *Andrade-Castillo*, for example, the Ninth Circuit found that the presumption of vindictiveness applied when the district court imposed a five-year probationary sentence on remand, which was "a more severe sentence" than the three years of supervised release originally imposed. 618 F. App'x. at 881. The Court held that "[t]he presumption of vindictiveness arises from any sentence the 'practical effect' of which is more severe than the original sentence." *Id.* This vindictive two-year

17

increase in supervision in *Andrade-Castillo* is the same vindictive two-year increase Mrs. Chrisley received upon resentencing here.

*Second*, no non-vindictive reason for doing so "affirmatively appear[s]" in the record. In *Rapal*, the defendant was originally sentenced to six months in custody, with one month to be served in prison and the other five to be served in home confinement. 146 F.3d at 663. Upon appeal, the defendant was resentenced to four months' imprisonment and one year of supervised release. *Id.* The Ninth Circuit found that the increase in the defendant's imprisonment from one month to four months was vindictive, even though the defendant's total confinement decreased from six months to four months. *Id.* The Court explained that, "[w]hile the record does not have to show that the judge was not actually punishing Rapal for taking the appeal, the record must show more than that the judge simply articulated *some* reason for imposing a more severe sentence." *Id.* at 664.

Here, just as in *Rapal*, the court gave no reason for imposing the more severe sentence, leading to a finding of vindictiveness. *See id.* To the contrary, it noted that all the reasons it originally gave Mrs. Chrisley a downward departure were still present. Still, despite her Guidelines

Range being reduced by more than one-third as a result of her successful appeal, Mrs. Chrisley received a higher sentence upon re-sentencing. Because the totality of her sentence was more severe, and because no non-vindictive reason for the increased sentence affirmatively appears in the record, the presumption of vindictiveness applies.

### b. There is Nothing in the Record to Overcome the Presumption of Vindictiveness.

A presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence." *Wasman*, 468 U.S. 559, 565 (1984). Such information can include new evidence introduced at sentencing or a new trial, from a new presentence investigation, or from the defendant's prison record. *Id.* at 571.

No information in the record supports increasing Mrs. Chrisley's supervised release term by two years. No new evidence at sentencing or from a new presentence investigation exists to support the need for increased supervision. The only new information before the court was the reduction of Mrs. Chrisley's loss amount by over $12 million, her benefit of the new zero-point offender reduction, and the fact that she had been a model inmate since her incarceration.

And it is not the case that the court simply forgot to mention some change in circumstance. It stated immediately before imposing the new sentence that "[e]verything that [it] took into account is still the same. Everything that [it] based [its] downward variance on is the same." (Doc. 445 at 34.) The record is not only devoid of any explanation for the increase in Mrs. Chrisley's term of supervised release but indicates that there were *no* changes in circumstances before the court. No events or conduct "of the defendant occurring after the initial sentencing" existed "to show a nonvindictive motive." *Wasman*, 468 U.S. at 572. In fact, "the only relevant event occurring after the initial sentencing was [Mrs. Chrisley]'s appeal." *Rapal*, 146 F. 3d at 663.

An increase in Mrs. Chrisley's term of supervised release based on her successful appeal creates a presumption of unconstitutional vindictiveness. And there is nothing in the record that to rebut the presumption. This appearance of vindictiveness is exactly the "evil the [*Pearce*] Court sought to prevent." *Texas v. McCullough*, 475 U.S. 134, 138 (1986).

### c. The Record Shows Actual Vindictiveness.

Even if the presumption of vindictiveness does not apply, a defendant can still "affirmatively prove actual vindictiveness." *Wasman*, 468 U.S. at 568-69. However, "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any case." *Pearce*, 395 U.S. at 725 n.20. But here, the record shows vindictiveness based on the district court's extensive criticism of public statements by Mrs. Chrisley's daughter. Savannah is the host of a podcast named "Unlocked with Savannah Chrisley." The successful podcast has 160,000 subscribers on YouTube alone, and often receives hundreds of thousands of views on its episodes. On the podcast, Savannah often talks about Mrs. Chrisley's case, including mentioning and criticizing the district court's handling of the case. In addition, Savannah criticized the court's handling of the case while speaking at the nationally televised Republican National Convention in July 2024.[4]

Mrs. Chrisley's daughter, of course, has a First Amendment right to criticize how a court handled her parents' case. And there was no

---

[4]     PBS NewsHour, *WATCH: Savannah Chrisley speaks at 2024 Republican National Convention | 2024 RNC Night 2*, YOUTUBE, (July 16, 2024), https://www.youtube.com/watch?v=KdMxsXAFpeU.

indication that she was speaking for Mrs. Chrisley. Nor were Savannah's public comments part of the record. But the court was unhappy with the comments and chose to make sure Savannah (and everyone else in the courtroom) knew how she felt. This was improper. And it is the only thing in the record that explains why Mrs. Chrisley was punished more harshly after her successful appeal.

### d. The Appropriate Remedy is Resentencing Before a Different Judge.

This Court has "the authority to order reassignment of a criminal case to another district judge as part of [its] supervisory authority over the district courts in this Circuit." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (citations omitted).

This supervisory power to reassign cases applies in a variety of circumstances. *See Brooks v. Central Bank of Birmingham*, 717 F.2d 1340, 1343 (11th Cir. 1983) ("stalemated posture" required reassignment of case to different judge). And it applies any time it is "just under the circumstances." 28 U.S.C. § 2106; *Liteky v. United States*, 510 U.S. 540, 554 (1994) (discussing the appellate courts' authority to assign a case to a different judge on remand when justice requires). Further, "[r]eassignment [to a different district judge] is appropriate where the

trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public." *Torkington,* 874 F.2d at 1446.

Reassignment on remand is the appropriate remedy here. First, the trial court's comments during sentencing aimed at public criticism of the court by Mrs. Chrisley's daughter were made *sua sponte* and had no relevance to Mrs. Chrisley's sentencing. But they did demonstrate that the court knew about Savannah's out-of-court criticisms and was frustrated by them. The court even accused Savannah of making the public statements to enhance her own podcast and TV ratings.

Viewing the resentencing transcript in its totality shows that Savannah's criticism of the case and her mother's prison conditions were front and center for the trial court at the hearing. Despite spending significant time criticizing Savannah's comments and motivation, the court provided no meaningful discussion of the relevance of the revised guidelines or its decision to abandon the previously granted downward variance. This evidence of actual bias warrants reassignment.

At the very least, under these circumstances, a "reasonable person would question the trial judge's impartiality." *Torkington,* 874 F.2d at

1446. This is enough to require reassignment. *Id*. Indeed, even when there is "no indication of actual bias," this Circuit considers three factors enumerated by the Second Circuit when determining whether a case should be reassigned: "(1) whether the original judge would have difficulty putting h[er] previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." *Id*. at 1447.

When there is a presumption of vindictiveness or evidence of actual bias, as here, reassignment is necessary to purge the appearance of retaliation. *See, e.g.*, *United States v. Mazzaferro*, 865 F.2d 450, 460 (1st Cir. 1989) ("Without drawing any conclusions as to the district court's actual reasons for appellant's sentence, we believe that the appearance of retaliation is great enough on the facts of this case to require that the sentence imposed be set aside and the case remanded for resentencing by a different judge.")

Reassignment cures the issue. As the Supreme Court has acknowledged, a different judge is "unlikely to have a 'personal stake' in the prior conviction," thus eliminating the presumption of vindictiveness.

*Alabama v. Smith*, 490 U.S. 794, 800 (1989); *see also United States v. Perez*, 904 F.2d 142, 145–46 (2d Cir. 1990); *Rock v. Zimmerman*, 959 F.2d 1237, 1257 (3d Cir. 1992), overruled on other grounds by *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *United States v. Cheek*, 3 F.3d 1057, 1064 (7th Cir. 1993); *United States v. Anderson*, 440 F.3d 1013 (8th Cir. 2006); *United States v. Newman*, 6 F.3d 623, 630–31 (9th Cir. 1993); *Macomber v. Hannigan*, 15 F.3d 155, 156–57 (10th Cir. 1994).

In addition to avoiding the appearance of retaliation, reassignment is appropriate here because the court's rulings have created a "stalemated posture" like the one in *Brooks*. 717 F.2d at 1343. At Mrs. Chrisley's original sentencing, the court declined to make particularized findings to support its loss amount calculation for the Guidelines, even at defense counsel's explicit request. (Doc. 363 at 175.) And at resentencing, it gave no indication it considered the corrected Guidelines. It failed to explain how it arrived at its sentence at all, spending far more time addressing Savannah Chrisley's public comments than grappling with appropriate sentencing considerations.

Even so, by reassigning Mrs. Chrisley's second resentencing to a different district judge, this Court need not "question the district judge's

ability, integrity, and impartiality." *Torkington,* 874 F.2d at 1447. Instead, this Court would be "preserv[ing] not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice." *Id.*

## II.  The Court Did Not Consider the Changed Sentencing Guidelines

Even if the sentence were not vindictive, and it was, this Court should still remand for resentencing due to other procedural errors.

The Sentencing Guidelines are the district court's "starting point" and "initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Courts "*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013). The district court here did not consider the Guidelines when it failed to shorten Mrs. Chrisley's sentence after a significant Guidelines reduction corresponding with a decreased loss amount and offender status.

At resentencing, when discussing Mrs. Chrisley's original sentencing, the court stated "[t]he downward variance that I gave . . . was not directly connected to a precise loss amount or number of years in the conspiracy. Those things, in my mind, had already been accounted for in

the Guidelines." (Doc. 445 at 33.) When explaining why it granted a variance, the court stated, "I simply looked at where we were in the Guidelines, thought it was way higher than what Mrs. Chrisley deserved, and so, contrary to what the government urged me to do, I gave a significant downward variance." (*Id*. at 33-34.)

The court identified the factors it considered in granting a downward variance during the first sentencing as "Ms. Chrisley's age and health and the fact that she was a caretaker for elderly and children, [which] haven't changed. None of that has changed. Everything that I took into account is still the same. Everything that I based my downward variance on is the same." (*Id*. at 34.)

Immediately before pronouncing the new sentence, the district court stated, "[a]lthough I completely accept the findings of the Court of Appeals, and we do need to have accurately calculated Guidelines, but my downward variance was not tied to the loss amount or the number of years in conspiracy. So my sentence will not change." (*Id*.) It therefore was tied only to the things the court had acknowledged had not changed.

Yet the court did not depart from the new Guidelines Range of 78 to 97 months and sentenced Mrs. Chrisley to 84 months of imprisonment

followed by 5 years of supervised release. If the district court followed its own reasoning, it would have granted a downward variance from the new Guidelines. After all, the court acknowledged the same reasons for the original downward variance applied. And it said the downward variance was unrelated to loss amount. By that logic, the same downward variance should have been applied within the new Guidelines Range. But the court instead sentenced Mrs. Chrisley to the same 84 months of imprisonment and added two years to her supervised release term. In arriving at the same sentence despite much lower Guidelines, with no stated reason why a downward variance no longer applies, the court failed to consider the Guidelines and thus committed procedural error.

## CONCLUSION

For all these reasons, this Court should again vacate Mrs. Chrisley's sentence and remand for resentencing before a different judge.

28

Respectfully submitted,

*/s/ J. Alex Little*

By:  _____

J. ALEX LITTLE (TN BPR # 029858)
ZACK C. LAWSON (TN BPR # 036092)
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
*Attorneys for Julie Chrisley*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND STYLE REQUIREMENTS

This document contains complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 5,399 words according to the Microsoft Word word processing program, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced serif typeface, Century Schoolbook, at a font-size of 14.

By: */s/ J. Alex Little*
_____
J. ALEX LITTLE (TN BPR # 029858)
*Counsel for Appellant*

Dated:  December 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I served this brief on all counsel of record through the Court's CM/ECF system on December 20, 2024.

By: *_____*
*/s/ J. Alex Little*

J. ALEX LITTLE (TN BPR # 029858)
*Counsel for Appellant*