No. 24-13298-JJ

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JULIE CHRISLEY,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-CR-00297-ELR-JSA-2

## BRIEF OF APPELLEE
## THE UNITED STATES OF AMERICA

RICHARD S. MOULTRIE, JR.
*Acting United States Attorney*

ANNALISE K. PETERS
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000

No. 24-13298-JJ

*United States of America v. Julie Chrisley*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The United States agrees that the Certificate of Interested Persons and Corporate Disclosure Statement included with Appellant's brief is a complete list of all people and entities known to have an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
Statement...............................................................................C-1

Statement Regarding Oral Argument .............................................. i

Table of Contents.......................................................................... ii

Table of Citations.........................................................................iv

Statement of Jurisdiction.............................................................vii

Statement of the Issues ................................................................. 1

Statement of the Case.................................................................... 2

    A. Course of Proceedings and Disposition Below..................... 2

    B. Statement of the Facts ........................................................ 4

        1. Trial............................................................................. 4

        2. The First Sentencing..................................................... 5

        3. The First Appeal .......................................................... 7

        4. Julie Chrisley's Resentencing ....................................... 8

    C. Standard of Review ........................................................... 13

Summary of the Argument............................................................ 15

Argument and Citations of Authority .......................................... 16

1. The district court plainly erred by imposing a term of
supervised release on counts 7 and 12 that exceeded the
statutory maximum, so the supervised release term should be
vacated and the case remanded for reimposition of a new
supervised release term............................................................ 16

2. There is no reason to reassign the case to a different judge on
limited remand. ...................................................................... 19

A.  The two-year increase in the supervised release term was likely an oversight the parties failed to timely appreciate and that the district court can correct on the limited remand.. 20

B.  The record reflects no bias or vindictiveness. .................... 23

3.  The district court did not abuse its discretion when it sentenced Chrisley within the newly adjusted Guidelines range after considering the Guidelines and § 3553 factors. ..................... 26

Conclusion.................................................................................... 31

Certificate of Compliance and Service ......................................... 32

# TABLE OF CITATIONS

**Federal Cases**

*Concepcion v. United States*,
  597 U.S. 481 (2022)....................................................24, 25

*Dean v. United States*,
  581 U.S. 62 (2017) .......................................................... 24

*Egidi v. Mukamai*,
  571 F.3d 1156 (11th Cir. 2009) ...................................... 30

*Gall v. United States*,
  552 U.S. 38 (2007) .......................................................... 26

*North Carolina v. Pearce*,
  395 U.S. 711 (1969) ........................................................ 20

*United States v. Azmat*,
  805 F.3d 1018 (11th Cir. 2015) ...................................... 14

*United States v. Booker*,
  543 U.S. 220 (2005) ........................................................ 26

*United States v. Calderon*,
  127 F.3d 1314 (11th Cir. 1997) ...................................... 17

*United States v. Campbell*,
  473 F.3d 1345 (11th Cir. 2007) .................................27, 28

*United States v. Crawford*,
  407 F.3d 1174 (11th Cir. 2005) .................................26, 27

*United States v. Croteau*,
  819 F.3d 1293 (11th Cir. 2016) ...................................... 30

*United States v. Dicter*,
  198 F.3d 1284 (11th Cir. 1999) ...................................... 30

*United States v. Gupta*,
  572 F.3d 878 (11th Cir. 2009) ....................................14, 19

*United States v. Hemingway*,
  No. 23-11262, 2024 WL 1110897 (11th Cir. Mar. 14, 2024). 18, 19

*United States v. Hunt*,
  526 F.3d 739 (11th Cir. 2008) ........................................ 30

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

iv

*United States v. Lopez-Chang*,
    482 F. App'x 524 (11th Cir. 2012) ................................................. 27

*United States v. Lora*,
    627 F. App'x 881 (11th Cir. 2015) ................................................. 29

*United States v. Lozano*,
    490 F.3d 1317 (11th Cir. 2007) ...................................................... 29

*United States v. Martin*,
    455 F.3d 1227 (11th Cir. 2006) ................................................ 19, 20

*United States v. Massey*,
    443 F.3d 814 (11th Cir. 2006) ........................................................ 21

*United States v. Mazarky*,
    499 F.3d 1246 (11th Cir. 2007) ...................................................... 13

*United States v. Rojas*,
    619 F. App'x 880 (11th Cir. 2015) ................................................. 18

*United States v. Sanchez*,
    940 F.3d 526 (11th Cir. 2019) ........................................................ 22

*United States v. Shaygan*,
    652 F.3d 1297 (11th Cir. 2011) ................................................ 13, 14

*United States v. Shelton*,
    400 F.3d 1325 (11th Cir. 2005) ...................................................... 18

*United States v. Starnes*,
    376 F. App'x 942 (11th Cir. 2010) ................................................. 18

*United States v. Torkington*,
    874 F.2d 1441 (11th Cir. 1989) (per curiam) ........................... 19, 20

*United States v. Turner*,
    474 F.3d 1265 (11th Cir. 2007) ...................................................... 30

*United States v. White*,
    416 F.3d 1313 (11th Cir. 2005) (per curiam) ................................ 27

*Williams v. New York*,
    337 U.S. 241 (1949) ...................................................................... 24

**Federal Statutes**

18 U.S.C. § 371 .................................................................................... 2

18 U.S.C. § 1343 .......................................................................... 2, 16

18 U.S.C. § 1344 .................................................................................. 2

18 U.S.C. § 1349 .................................................................................. 2

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

18 U.S.C. § 1512(c)(2) ................................................................ 2, 16
18 U.S.C. § 3231 ..............................................................................vii
18 U.S.C. § 3553 ............................................................................. 26
18 U.S.C. § 3553(a) ........................................................10, 26, 29, 30
18 U.S.C. § 3559(a)(1)-(2) ............................................................. 16
18 U.S.C. § 3559(a)(3)-(4) ......................................................... 16, 17
18 U.S.C. § 3583(a) ........................................................................ 16
18 U.S.C. § 3583(b)(1) .................................................................... 16
18 U.S.C. § 3583(b)(2) ............................................................... 16, 17
18 U.S.C. § 3742 ..............................................................................vii
26 U.S.C. § 7201 .............................................................................. 2
26 U.S.C. § 7206(2) ......................................................................... 2
28 U.S.C. § 1291 ..............................................................................vii

## Federal Rules

11th Cir. R. 28-5 ............................................................................. 2
Fed. R. App. P. 4(b)(1)(A) .............................................................vii
Fed. R. App. P. 32(a)(5) ................................................................. 32
Fed. R. App. P. 32(a)(6) ................................................................. 32
Fed. R. App. P. 32(a)(7)(B) ............................................................ 32
Fed. R. App. P. 32(f) ...................................................................... 32

## Sentencing Guidelines

U.S.S.G. § 4C1.1 ............................................................................ 10

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ......................................... 24

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 24-13298-JJ

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

### JULIE CHRISLEY,

*Defendant-Appellant.*

## STATEMENT OF JURISDICTION

(A) The district court had subject matter jurisdiction over the underlying criminal case based on 18 U.S.C. § 3231.

(B) The court of appeals has jurisdiction over this direct appeal from the judgment and sentence of the district court, under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

(C) While not jurisdictional, the notice of appeal was timely filed on October 10, 2024, within 14 days of the entry of the district court's judgment and commitment order, on September 30, 2024. Fed. R. App. P. 4(b)(1)(A).

(D) This appeal is from a final judgment and commitment order that disposes of all the parties' claims in this criminal case.

## STATEMENT OF THE ISSUES

1. A term of supervised release cannot exceed the maximum term authorized by statute. Julie Chrisley was sentenced to 60 months of supervised release on two counts where only 36 months of supervised release is authorized. Should this Court vacate the supervised release term and remand for a limited resentencing to revise the supervised release term?

2. Where the district court announced that it intended to impose the same sentence and mistakenly added two years of supervised release without objection from the parties, and where the record shows no vindictiveness towards the defendant, should this Court take the extraordinary step of reassigning the case to a different judge on limited remand?

3. After a lengthy initial sentencing and resentencing after a limited remand, the district court properly recalculated and considered the new Guidelines range before imposing a within-Guidelines sentence of 84 months in prison. Was this within-Guidelines sentence procedurally reasonable?

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

In February 2022, a grand jury returned a superseding indictment against Julie Chrisley ("Chrisley"), her husband Todd Chrisley[1], and their accountant Peter Tarantino, charging them with conspiring to defraud the IRS, under 18 U.S.C. § 371. (Doc. 130).[2] The Chrisleys were also charged with conspiracy to commit bank fraud under 18 U.S.C. § 1349, five counts of bank fraud under 18 U.S.C. § 1344, and one count of tax evasion under 26 U.S.C. § 7201. (*Id.*). Chrisley was also charged with one count of wire fraud under 18 U.S.C. § 1343, and one count of obstruction of justice under 18 U.S.C. § 1512(c)(2). (*Id.*). Tarantino was also charged with two counts of aiding the filing of false tax returns under 26 U.S.C. § 7206(2). (*Id.*).

In May 2022, following a nearly three-week trial, a jury convicted Defendants of all counts. (Doc. 228). The district court sentenced Todd Chrisley and Julie Chrisley to below-Guidelines sentences of 144 months' and 84 months' imprisonment, respectively. (Docs. 325,

---

[1] Because Julie Chrisley is the only appellant in this case, this brief refers to her as "Chrisley" and to Todd Chrisley by his full name. This brief refers to them jointly as "the Chrisleys."

[2] Page numbers to any transcripts cited are the page numbers designated by the court reporter.  *See* 11th Cir. R. 28-5.

337, 338). The court also ordered restitution and a forfeiture money judgment of $17,270,741.57, jointly and severally, and imposed a term of three years' supervised release. (Docs. 337, 338, 347). The district court sentenced Tarantino to a below-Guidelines sentence of 36 months' imprisonment, fined him $35,000, and imposed a three-year term of supervised release. (Docs. 325, 330).

All three Defendants timely appealed, raising numerous issues. (Docs. 333, 339, 340). In June 2024, after extensive briefing and with the benefit of oral argument, this Court affirmed all issues on appeal "except for the loss amount attributed to Julie" for the bank fraud scheme, finding that, although the district court held her responsible for losses from the start of the scheme in 2006, it "did not identify the evidence it relied on to hold [her] accountable for losses incurred before 2007." (Doc. 415-3). Thus, this Court "vacate[d] Julie's sentence and remand[ed] solely for the district court to make the factual findings and calculations necessary to determine loss, restitution, and forfeiture as to Julie and to resentence her accordingly." (*Id.*).

In September 2024, the district court held a resentencing hearing for Chrisley. (Doc. 443). The government notified the court in advance that it would not seek to attribute any losses to Chrisley incurred during the bank fraud scheme prior to 2007. (Doc. 433). At

the hearing, after calculating the new adjusted Guidelines range and hearing argument from the parties, the district court announced that it was important to correctly calculate the Guidelines but that its "sentence will not change." (Doc. 445-34). The court reimposed the same 84-month term of incarceration, which was within the newly adjusted Guidelines range, to be followed by a five-year term of supervised release. (*Id.*-34-35). The court did not comment on the fact that it was adding two years to the original supervised release term, and neither party objected to it. (*Id.*). The court ordered restitution and a forfeiture money judgment of $4,740,645.04, which is equal to the loss amount the parties agreed upon before resentencing. (*Id.*-35). Chrisley is currently incarcerated.

### B. Statement of the Facts

#### 1. Trial

After a nearly three-week trial in May 2022, the jury convicted Defendants on all counts. On the tax related charges, the government's evidence established that the Chrisleys and Tarantino engaged in a years-long tax evasion scheme to avoid collection of Todd Chrisley's back taxes. (Doc. 115-1-2). The Chrisleys hid Todd Chrisley's income in an account that Julie Chrisley owned, and as soon as the IRS began looking into accounts belonging to Julie

Chrisley, they transferred that account to another family member.
(*Id.*).

On the bank fraud charges, the evidence established that the
Chrisleys and their business partner obtained tens of millions of
dollars in fraudulent loans by submitting materially false documents
to banks over a six-year period from 2006 to 2012. (*Id.*-2-3). The false
and fabricated documents "grossly overrepresented the Chrisleys'
assets to make the applications more attractive to banks." (*Id.*). During
this conspiracy, Julie Chrisley earned the nickname "ass[ ] [is] on fire"
by driving "all over town paying off late-due loan amounts." (*Id.*-11).
Some of the fraudulent loans were issued directly to Julie Chrisley's
own real estate company. (*Id.*)

The evidence also established that Julie Chrisley engaged in a wire
fraud scheme by providing fabricated documents to a California
property owner when applying to rent a home, (count 7), and that in
2018 and 2019, she attempted to obstruct the grand jury investigation
in this case by transmitting a fabricated document to the grand jury in
response to a subpoena (count 12).

## 2. The First Sentencing

The court held a lengthy sentencing in November 2022. (Doc.
363). At the hearing, the government presented evidence in addition
to that presented at trial regarding the loss amount resulting from the

Chrisleys' bank fraud scheme. (Doc. 363-35-69; Gov't Sent. Ex.3). The government highlighted—and the district court agreed—that the government had taken a highly conservative approach to calculating the loss amount, including by using actual instead of intended loss, and giving the Chrisleys the benefit of the doubt about every repayment they claimed to have made. (Doc. 363-102-03, 113). After several hours of testimony and the introduction of detailed records from the FDIC, the district court agreed with the government's calculations, finding that the actual loss amount from the bank fraud was more than $9,500,000 but less than and $25 million (specifically, the court found the loss amount to be $17,270,741.57). (*Id.*-113).

The district court established the total offense level for Chrisley based on multiple enhancements, including a 20-level increase for the loss amount. (*Id.*-174). The final adjusted offense level was calculated at 32, resulting in a guideline custody range of 121 to 151 months of imprisonment. (*Id.*-174). The government recommended a within-Guidelines sentence of 144 months (12 years), and Chrisley requested a non-custodial sentence. (*Id.*-178,209-10, 214). Notably, none of the parties argued for or even addressed what supervised release term should be imposed. (*Id.*).

The district court sentenced Chrisley to 84 months' imprisonment followed by three years of supervised release, which was more than

three years below the low-end of the sentencing guideline range (*Id.-*
227-28). In imposing the sentence, the court stated that it could not
"ignore the egregious and flamboyance in this case, the continuation
of this type of conduct even after the launch of the [criminal]
investigation, [and] ... lack of remorse." (*Id.-*223). Nevertheless, the
court explained it was granting a downward variance based on
Chrisley's age, health, minor children at home, and caretaking
responsibilities for elderly parents. (*Id.*). The district court imposed
three-years of supervised release and ordered restitution and a
forfeiture money judgment, both in the amount of $17,270,741.57.
(Docs. 347, 338).

### 3. The First Appeal

All three Defendants timely appealed a number of issues, including
(1) whether the evidence was sufficient to convict the Chrisleys of
bank fraud, (2) whether the evidence was sufficient to convict the
Chrisleys of conspiracy to defraud the IRS and tax evasion,
(3) whether the district court abused its discretion in concluding that
Defendants were not entitled to an evidentiary hearing or new trial
based upon purported *Giglio* violations and alleged prosecutorial
misconduct, (4) whether the district court abused its discretion in
denying Tarantino's motion for severance, (5) whether the district
court abused its discretion in denying the Chrisleys' belated motion to

suppress evidence as untimely, (6) whether the district court clearly erred in determining Julie Chrisley's loss amount, and (7) whether the district court clearly erred in imposing restitution and forfeiture money judgements. (*See* Case No. 22-14074).

After extensive briefing and with the benefit of oral argument, the Eleventh Circuit affirmed all the convictions and "all issues except for the loss amount attributed to Julie." (Doc. 415-3). While "sufficient evidence allowed a reasonable jury to conclude that Julie participated in the [bank fraud] conspiracy as early as 2007," "[t]he district court did not identify the evidence it relied on to hold Julie accountable for losses incurred before 2007"—that is, during 2006, the year the conspiracy began. (*Id.*-3, 32). Accordingly, this Court "vacate[d] Julie's sentence so the district court [could] address the narrow issue of what the proper loss amount attributable to Julie is for purposes of the base offense level, restitution, and forfeiture" and "make factual findings about when Julie's involvement in the conspiracy began." (*Id.*-44).

### 4. Julie Chrisley's Resentencing

In advance of Chrisley's resentencing, the government agreed to proceed on a loss amount of $4.7 million—the actual loss incurred after Chrisley's real estate company received its first fraudulent loan on July 11, 2007. (Doc. 433-3). Because this Court had already determined there was sufficient evidence to support that finding,

there were no contested factual issues at the resentencing. (*Id.*; Docs. 441; 445-5).

The United States Probation Office did not issue a revised presentence report (PSR), and no new objections to the PSR were filed. (PSR). Notably, the PSR incorrectly stated that the sentencing options for counts 7 and 12 allowed for a five-year term of supervised release, when in fact only a three-year term was permissible. (*Id.*-91). Neither party objected to this portion of the PSR. (*Id.*).

At the resentencing on September 25, 2024, the district court began by noting that its original sentence—84 months of imprisonment—was "well below the [original] calculated sentencing guideline range for [Julie's] crimes of conviction, [and] well below the prosecution's sentence recommendation" and that it had granted a downward variance based on Chrisley's age, health, and having minor children and elderly parents. (Doc. 445-2).

Next, the court announced the agreed-upon revised advisory custody Guidelines range as 78 to 97 months of imprisonment (a four-level reduction from the 121-to-151-month range from the original 2022 sentencing). (*Id.*-4). The lower Guidelines range was a result of two changes: (1) the lower loss amount resulted in two-level reduction, down to an 18-level enhancement (instead of a 20-level enhancement), and (2) a two-level reduction for Chrisley under the

zero-point offender provision in amended U.S.S.G. § 4C1.1 that went into effect with the 2023 U.S. Sentencing Guidelines. (*Id.*-4-5). Neither party objected to the adjusted Guideline range, put on evidence, or called witnesses. (*Id.*-5).

The court then heard from the parties regarding the § 3553(a) factors. The government urged the court to impose the same 84-month sentence the court originally imposed, which was within the new adjusted Guidelines range, and cited back to the extensive argument it presented at the original sentencing two years earlier. (*Id.*-6; Doc. 433-4). The government also noted that even after the reduced loss amount, nearly $5 million in fraudulent loans were issued for Chrisley's benefit from 2007. (Doc. 445-6). Next, the government reminded the court it had taken a very conservative approach to calculating the actual loss amount, giving the Defendants every benefit of the doubt about prior repayments and by not proceeding on an intended loss theory. (*Id.*-7-8). Third, the government reiterated that Chrisley's fraudulent activities were extensive and ongoing, involving over a decade of criminal activity, and that she had still shown no remorse for her crimes. (*Id.*-10-12). The government argued in summary that "nothing about [the 3553(a) factors and the changed guideline range] would counsel in favor of imposing a sentence below 84 months, which is within the adjusted guideline range." (*Id.*-13).

10

Chrisley asked for a below-Guidelines sentence, suggesting that 60 months would be appropriate, arguing that the loss amount reduction was significant and that her exemplary behavior in prison, with extensive programming and rehabilitation efforts, demonstrated her commitment to reform. (*Id.*-21-23). Before sentencing, she had submitted a number of certifications she had achieved while in custody and a number of character letters from family members and friends. (Docs. 441-1, 441-2). During allocution, she acknowledged the hardship her family faced due to her incarceration but took responsibility, stating, "I apologize for my actions and what led me to where I am today." (Doc. 445-29-30).

Neither the government nor Chrisley made an argument about the appropriate term of supervised release in their sentencing memos or at the resentencing hearing. (Docs. 441; 443; 445). There was never any discussion of the supervised release term by the parties.

Before the court pronounced its sentence, it briefly addressed the issue of Chrisley's minor children, who had been mentioned in numerous letters submitted by the defense, and by defense counsel at sentencing and the resentencing. (*Id.*-31). The court expressed sympathy for all cases where defendants have minor children impacted by a prison sentence but noted that it was the Defendants' actions that placed the children in a difficult position. (*Id.*). The court

11

expressed its hope that anyone involved in this case was "more concerned with [the children's] well-being, not with any TV ratings, podcast audiences, anything, but with their well-being so that you are, first of all, being honest with them about what has happened in this case and teaching them how to be good people."[3] (*Id.*-32).

The court then explained that its original downward variance and 84-month sentence was based on factors that had not changed; it rejected Chrisley's suggestion that the court should use a mathematical equation to give a percentage of a downward variance from the new Guidelines range. (*Id.*-33). The court explained:

> Everything that I took into account is still the same. Everything that I based my downward variance on is the same. Although I completely accept the findings of the court of appeals, and we do need to have accurately calculated guidelines, but my downward variance was not tied to the loss amount or the number of years in conspiracy. So my sentence will not change.

(*Id.*-34). The court re-imposed the same 84-month incarceration sentence and ordered $4,740,645.04 in restitution and forfeiture, the amount the parties had agreed to prior to resentencing. (*Id.*-34-35).

---

[3] As Chrisley cites in her brief, before the resentencing, Chrisley's adult daughter, Savannah Chrisley, publicly criticized the district court, the prosecution team, and the case against her parents at a nationally televised speech at the Republican National Convention and on her podcast. (Def. Br.-vii).

Although the court announced that the "sentence will not change," it imposed a five-year term of supervised release (instead of the previously imposed three-year term) on counts 1–7 and count 12. (*Id.*-34).

Chrisley objected to the sentence imposed on three grounds: (1) "a lack of consideration of the new Guidelines," (2) a claim that "the sentence itself is retaliatory based on a successful appeal," and (3) that the court considered some "*ex parte* evidence." (*Id.*-37). The court then noted on the record that no podcasts or outside information factored into the decision to impose the same sentence. (*Id.*-37-38). Chrisley did not specifically object to the five-year supervised release term; nor did she object that the supervised release term was longer when the judge said that the "sentence will not change." (*Id.*).

**C. Standard of Review**

1. The legality of a supervised release sentence is reviewed *de novo*, although when no objections are raised, it is reviewed for plain error. *United States v. Mazarky*, 499 F.3d 1246, 1248 (11th Cir. 2007).

2. This Court has the supervisory authority to reassign a criminal case to a different district judge on remand, but it is an "extraordinary" measure that it "do[es] not order ... lightly." *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) (internal

quotation marks omitted). Reassignment is appropriate where there is "actual bias" or "when a district judge adheres to erroneous views after multiple remands." *United States v. Gupta*, 572 F.3d 878, 891 (11th Cir. 2009) (internal quotations omitted).

3. This Court reviews the procedural reasonableness of a sentence under a deferential standard for abuse of discretion. *United States v. Azmat*, 805 F.3d 1018, 1047 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

Inadvertently and without objection from the parties, the district court followed the PSR and imposed a five-year term of supervised release. In two of the counts, only a three-year term was permissible, so the five-year term was plain error. Accordingly, this Court should vacate only the supervised release term and remand for that limited correction. This Court should not take the extraordinary remedy of reassigning the case to a different judge on remand because there is no evidence of judicial vindictiveness or bias, and the district court's decision to impose an 84-month, within-Guidelines sentence was well within its discretion.

Contrary to what the defense argues, during resentencing the district court considered the operative Sentencing Guidelines range. As the district court explained at the resentencing, the within-range sentence it imposed was based on factors that had not changed, such as the seriousness of the defendant's criminal conduct. As the court had explained at the first sentencing, it could not ignore Chrisley's "egregious greed and flamboyance" and continuation of criminal conduct after the investigation began. (Doc. 363-223).

## ARGUMENT AND CITATIONS OF AUTHORITY

1.  **The district court plainly erred by imposing a term of supervised release on counts 7 and 12 that exceeded the statutory maximum, so the supervised release term should be vacated and the case remanded for reimposition of a new supervised release term.**

When a district court imposes a term of imprisonment, it may also impose a term of supervised release to follow. 18 U.S.C. § 3583(a). For Class A or B felonies (crimes punishable by 25 years' imprisonment or more), the authorized term of supervised release is up to five years. 18 U.S.C. §§ 3583(b)(1), 3559(a)(1)-(2). For Class C or D felonies (crimes punishable by 5 to 25 years' imprisonment), the authorized term of supervised release is up to three years. 18 U.S.C. §§ 3583(b)(2), 3559(a)(3)-(4).

Six of the counts of which Chrisley was convicted, counts 1–6, each carry a term of supervised release of up to five years. 18 U.S.C. §§ 3583(b)(1), 3559(a)(1)-(2). But two counts she was convicted of, count 7 (wire fraud, in violation of 18 U.S.C. § 1343), and count 12 (obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2)), are punishable by a 20-year term of imprisonment, making them Class C felonies, where only a three-year term of supervised release is authorized.

16

The final PSR incorrectly stated that the sentencing options for counts 7 and 12 allowed for a five-year term of supervised release, when in fact only a three-year term was permissible. (PSR-91). Neither party objected to this portion of the PSR. (PSR).

At resentencing, consistent with the PSR, the district court imposed a five-year term of supervised release on counts 1–7 and 12. While that term was permissible for counts 1–6, the five-year term exceeded the statutorily authorized amount for counts 7 (wire fraud) and 12 (obstruction of justice). 18 U.S.C. §§ 3583(b)(2), 3559(a)(3)-(4). Presumably, the district court was relying on the PSR, which neither party had objected to, when it imposed the sentence. Neither party raised or argued the term of supervised release in their sentencing memoranda, in any objections to the PSR, or at the resentencing hearing. (Docs. 443; 441; 445).

When the district court announced the sentence, Chrisley did not preserve an objection to the length of her supervised release term. (Doc. 445-37). She did not object to the supervised release term exceeding the statutory maximum, nor to it being longer than the term of supervised release at her original sentencing. (*Id.*). She made no objection at all related to supervised release. (*Id.*). Thus, the length of the supervised release term should be reviewed only for plain error. *See United States v. Calderon*, 127 F.3d 1314, 1334 (11th Cir. 1997)

17

("As an evidentiary matter, a contemporaneous objection was required to allow the district court the opportunity to correct any error that may have existed."). To show plain error, a defendant has the burden of showing (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Shelton*, 400 F.3d 1325, 1328–29 (11th Cir. 2005). If all three conditions are met, this Court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Here, the five-year term of supervised release on counts 7 and 12 is plain error because it exceeds the maximum term authorized by statute. *United States v. Starnes*, 376 F. App'x 942, 944 (11th Cir. 2010). In such situations, this Court vacates the district court's judgment only with respect to the supervised release term and remands with instructions to correct that issue. *See, e.g., United States v. Rojas*, 619 F. App'x 880, 883 (11th Cir. 2015) (after the government conceded that the supervised release sentence was longer than allowed by statute, the district court affirmed the sentence, but vacated the judgment with respect to the period of supervised release, and remanded the case with instructions that the district court resentence Rojas to serve no more than the authorized period of supervised release); *United States v. Hemingway*, No. 23-11262, 2024 WL 1110897,

at *2 (11th Cir. Mar. 14, 2024) (vacating a sentence only as to the conditions of supervised release and remanding for limited resentencing on the conditions). Accordingly, this Court should vacate the term of supervised release on all counts and remand for the limited purpose of reimposing a term of supervised release.

## 2. There is no reason to reassign the case to a different judge on limited remand.

This Court has "the authority to order reassignment of a criminal case to another district judge as part of [its] supervisory authority over the district courts in this Circuit." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (per curiam). "Reassignment is an extraordinary order," *United States v. Gupta*, 572 F.3d 878, 891 (11th Cir. 2009), and this Court does "not order [it] lightly." *Torkington*, 874 F.2d at 1447. "[W]here there is no indication of actual bias[,]" this Court considers at least three factors to determine whether to reassign a case: "(1) whether the original judge would have difficulty putting [her] previous views and findings aside; (2) whether assignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." *Id.* Reassignment is appropriate when a district judge adheres to erroneous views after multiple remands. S*ee, e.g., United States v. Martin*, 455 F.3d 1227, 1242 (11th

Cir. 2006) (ordering reassignment after second appeal, when district court changed sentence from probation to seven days of imprisonment). It is also appropriate when a judge "question[s] the wisdom of the substantive law he ha[s] to apply and challenge[s] the government's decision to prosecute [the defendant.]" *Torkington*, 874 F.2d at 1447 (ordering reassignment after second appeal, when district court "dismissed the case at the first opportunity by construing a motion for mistrial as a motion for entry of judgment of acquittal[,]" stated that the prosecution was "silly," and "demonstrated great difficulty in putting aside his prior conclusions about the merits of this prosecution").

In this case, there is no reason to take the extraordinary step of reassignment because there was no vindictiveness by the court, and the court stated it intended to impose the same sentence it had previously imposed.

### A. The two-year increase in the supervised release term was likely an oversight the parties failed to timely appreciate and that the district court can correct on the limited remand.

Chrisley argues that a presumption of vindictiveness applies because the court imposed an additional two years of supervised release at resentencing—a harsher sentence than she originally received. (Def. Br.-16-18 (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)). But the district court's imposition of the five-year supervised

release term is at odds with its pronouncement that its "sentence will not change." (Doc. 445-33-34). And, like the district court, both parties appear to have missed the change in supervised release term, and neither party objected to the change.

Chrisley claims on appeal that she timely objected to the "harsher sentence," but she did not. (Def. Br.-19). She objected that "the sentence itself is retaliatory based on a successful appeal" when the court imposed the same custodial sentence despite the lower Guidelines range. (Doc. 445-37). She never mentioned supervised release at all in her objections, likely because—like undersigned counsel—she did not appreciate the supervised release change in the moment. (*Id.*). After all, neither party made arguments in their sentencing memoranda or at the resentencing about supervised release. (Docs. 441; 443; 445). And both parties missed the change in the PSR and failed to object, even where the five-year term exceeded the statutory maximum.

Whatever the reason, because Chrisley failed to object with specificity to the increased term of supervision, the court was not put on notice and did not have an opportunity to either amend the term of supervised release to its original three-year term or, alternatively, to explain its reasoning for adding two years of supervision. *See, e.g.,* *United States v. Massey*, 443 F.3d 814, 818-19 (11th Cir. 2006)

(explaining that "plain error review applies when parties do not raise objections clearly in the district court so as to put the district court on sufficient notice of the legal basis for the objection").

As set forth in the preceding section, the court plainly erred by imposing a five-year term of supervision on counts 7 and 12. Chrisley has not, however, met her burden to show that any error was plain in imposing a five-year term of supervision on counts 1–6. This Court has held that without "explicit language of a statute or rule," an error "cannot be plain unless the issue" in question has been "specifically and directly resolved by … on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). Chrisley identifies no such precedent holding that adding a lawful two-year term of supervised release on remand during resentencing is impermissible. Thus, even if she could establish that the five-year term of supervised release was somehow error, at the very least she cannot carry her burden of showing any error was plain.

Nevertheless, in the interests of justice, and because the district court stated its intent to impose the same sentence, this Court should vacate the term of supervised release on all counts.  Vacating the supervised release term and remanding with instructions to address that limited issue will afford the district court the opportunity to correct the illegal supervised release term on counts 7 and 12 and also,

as to counts 1–6, to either impose the sentence it said it intended to impose (the same sentence it imposed originally, that is, a three-year term of supervised release) or to explain its reasoning for the increased term. If the court imposes the same sentence that it imposed originally, that is, one with a three-year term of supervised release, which it stated its intent to do, there is no presumption of vindictiveness. In any case, as discussed below, the record reflects no bias or vindictiveness, and there is no support for the extraordinary remedy of reassigning the case to another district judge.

## B. The record reflects no bias or vindictiveness.

Chrisley argues that regardless of the presumption of vindictiveness, the record shows actual vindictiveness "based on the district court's extensive criticism of public statements by Mrs. Chrisley's daughter." (Def. Br.-29-30). She misconstrues and overstates the record, which shows no vindictiveness.

Chrisley bases her argument on the district court supposedly improperly considering *ex parte* information, but there were no *ex parte* communications here—just information that Chrisley's family members chose to put into the public domain through the media. (Def. Br.-7). Chrisley correctly points out that her daughter has a First Amendment right to criticize how the court handled this case—a right her daughter availed herself of—but that is beside the point. (*Id.*-29).

23

*Ex parte* means: "On or from one party only, usu[ally] without notice to or argument from the adverse party." *Ex parte, Black's Law Dictionary* (11th ed. 2019). Here, in contrast, the information was not from one party or the other, nor was it limited to either; it was information that was available to everyone in the public domain.

The district court was permitted to consider anything in the public record at sentencing. "There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at [a] sentencing proceeding." *Concepcion v. United States*, 597 U.S. 481, 491 (2022) (quoting *Dean v. United States*, 581 U.S. 62, 66, (2017)). For hundreds of years, "courts in this country [have] practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York*, 337 U.S. 241, 246 (1949). "The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution." *Concepcion*, 597 U.S. at 494. Chrisley has cited no authority in support of her claim that the court was not permitted to consider public information, particularly where this was information that Chrisley's family chose to publish, denying her guilt

24

and falsely impugning the prosecutors and the tribunal, despite overwhelming evidence to the contrary.

Regardless, the court expressed no animus towards Chrisley or her family at sentencing and made clear that the sentence it imposed—which it intended to be the same sentence that it imposed originally—had nothing to do with public statements made by Chrisley family members. To the contrary, the court expressed sympathy for the Chrisleys' two minor children impacted by their mother's incarceration and shared that it hoped the family was more concerned with those children's well-being than anything else, and that it hoped they were teaching the children to be "good people." (Doc. 445-32-33). There was nothing improper about those comments, and Chrisley cites no authority in support of her claim otherwise. *See Concepcion*, 597 U.S. at 490 (noting that "federal judges [are] entrusted with wide sentencing discretion").

Finally, the court was clear that no public information had impacted its sentence. When Chrisley objected to her sentence as retaliatory, the court addressed the issue head-on:

> I will say that I have not considered any podcasts or anything in terms of the sentence. That was a comment referencing the children, because the children have been referenced here, and the person to whom that was directed wrote this court a letter for consideration during this sentencing. And I will state here, it did not factor into my decision to not change my sentence.

(Doc. 445-37-38). In short, even if a presumption of vindictiveness applied (which it does not), the record shows no animus or actual vindictiveness expressed by the court at resentencing when it imposed the same 84-month incarceration sentence that it imposed originally.

**3. The district court did not abuse its discretion when it sentenced Chrisley within the newly adjusted Guidelines range after considering the Guidelines and § 3553 factors.**

Despite the district court's statement that it had considered "everything presented" and the sentencing factors in § 3553(a), Chrisley contends that her sentence was procedurally unreasonable because the court failed to consider the newly adjusted, lower Guidelines range in imposing the 84-month sentence. (Def. Br.-34-36; Doc. 445-34-36). Her argument lacks merit.

A sentencing court commits procedural error when it fails to calculate or consider the Sentencing Guidelines range, fails to consider the § 3553(a) factors, or fails to adequately explain its sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). Although the Guidelines are discretionary in nature, the court "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The consultation requirement, "at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). After

satisfying this requirement, the district court may impose a more severe or more lenient sentence, "but the requirement of consultation itself is inescapable." *Id.* at 1179; *see also United States v. White*, 416 F.3d 1313, 1318 (11th Cir. 2005) (per curiam) (holding that a sentencing court "must consider ... the sentencing range" (quotation marks omitted)).

In *United States v. Campbell*, this Court held that a district court can satisfy the consultation requirement by providing "some indication" on the record that it was aware of and considered the Guidelines. 473 F.3d 1345, 1349 (11th Cir. 2007) (quotation marks omitted); *see also United States v. Lopez-Chang*, 482 F. App'x 524, 525 (11th Cir. 2012) (discussing *Campbell*). In *Campbell*, this Court held that a sentence was procedurally unreasonable—even though both parties mentioned the defendant's guideline range—because "the district court *itself* never made any on-the-record conclusion regarding the Guidelines or the applicable sentencing range." 473 F.3d at 1349 n.2 (emphasis in original).

This case is entirely different. The district court correctly calculated the Guidelines range, which was agreed to by both parties. (Doc. 445-4). The court also explicitly recognized the new Guidelines range and considered it along with "everything presented" when reimposing the 84-month sentence. (*Id.*-34-36). The court began by explaining how it

arrived at the 84-month sentence at the first sentencing, stating that it "simply looked at where we were in the Guidelines, thought it was way higher than what Mrs. Chrisley deserved, and so, contrary to what the government urged me to do, I gave a significant downward departure" based on Chrisley's age, health, and caretaking responsibilities for elderly parents and minor children. (*Id.*-33-34). The court went on:

> None of that has changed. Everything that I took into account is still the same. Everything that I based my downward variance on is the same. Although I completely accept the findings of the court of appeals, and we do need to have accurately calculated Guidelines, but my downward variance was not tied to the loss amount of the number of years in the conspiracy. So my sentence will not change.

(*Id.*-34). The court went beyond giving just "some indication" that it was aware of and had considered the Guidelines. *Campbell*, 473 F.3d at 1349.

Indeed, that the Guidelines range shifted squarely to what the district court already felt was a reasonable sentence only strengthened the court's reasoning that the custodial sentence was and remains a reasonable one. Moreover, that the district court imposed the same sentence is unremarkable because very little changed on this Court's narrow remand: Just one year of Chrisley's participation in the lengthy bank fraud conspiracy was removed from the analysis,

28

resulting in a two-level loss reduction, and she received a two-level reduction for being a zero-point offender as a result of across-the-board changes to the Sentencing Guidelines. Everything else was the same.

Chrisley's real complaint is that the district court rejected her suggestion to apply an equation to arrive at her sentence. (Def. Br.-36.) Chrisley requested at resentencing that the district court mathematically calculate a below-Guidelines sentence proportionate to the initial downward variance. (Docs. 445-23; 441-1-2). But the district court's decision not to convert the qualitative § 3553(a) factors into a math equation was within the court's sound discretion, and it does not mean the court failed to consider the Guidelines range. After all, "district courts do not calculate criminal sentences by using computer software. Rather, they do what the district court did in this case—consider the defendant's criminal history, offense level, and the § 3553(a) factors, holistically, to determine the appropriate sentence." *United States v. Lora*, 627 F. App'x 881, 887 (11th Cir. 2015); *see also United States v. Lozano*, 490 F.3d 1317, 1324 (11th Cir. 2007) ("The district court may determine on a case-by-case basis the relative weight to give the Guidelines range in light of the other section 3553(a) factors.").

29

Finally, while Chrisley does not directly challenge the substantive reasonableness of her sentence on appeal, the 84-month sentence was substantively reasonable. Because she did not develop the issue of substantive reasonableness in her opening brief, it is waived on appeal. *Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (holding that an issue raised for the first time in a reply brief was waived). Regardless, this Court ordinarily expects a sentence within the Guidelines range to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). And an acknowledgment by the district court that it considered the § 3553(a) factors—as the court acknowledged here—is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007); (Doc. 445-36). Chrisley may disagree with how the § 3553(a) factors were weighed— including how to factor in the new Guidelines range or her good behavior while in custody—but the weight to accord the § 3553(a) factors lies within the district court's broad discretion. *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). Ultimately, the district court decided to impose the same incarceration sentence, that was now within the Guidelines range, because the § 3553(a) factors

that weighed most heavily in its initial analysis had not changed, and there was no abuse of discretion.

Chrisley fails to carry her burden of showing any abuse of discretion by the district court when it decided to impose the 84-month, within-Guidelines sentence, on the limited remand.

## CONCLUSION

The Court should affirm the district court's 84-month incarceration sentence. However, because the imposition of a 60-month term of supervised release in counts 7 and 12 was plain error, the Court should vacate and remand for the limited purpose of addressing Chrisley's term of supervised release.

Respectfully submitted,

RICHARD S. MOULTRIE, JR.
*Acting United States Attorney*

*/s/ Annalise K. Peters*
ANNALISE K. PETERS
*Assistant United States Attorney*

31

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word processing software in 14-point Goudy Old Style.

This brief complies with the 13,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word processing software, it contains 6,513 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Today, this brief was uploaded to the Court's website using the CM/ECF system, which automatically sends notification to the parties and counsel of record:

> J. ALEX LITTLE, ESQ.
> Litson PLLC
> 54 Music Square East
> Suite 300
> Nashville, Tennessee 37203

February 20, 2025

> /s/ Annalise K. Peters
> ANNALISE K. PETERS
> *Assistant United States Attorney*

32