No. 24-13298

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee,*

v.

**JULIE CHRISLEY,**
*Defendant—Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
THE HONORABLE ELEANOR L. ROSS, DISTRICT JUDGE
CASE NO. 1:19-cr-00297-ELR-JSA

## APPELLANT'S REPLY

J. ALEX LITTLE
ZACK C. LAWSON
LITSON PLLC
54 Music Square East, Suite 300
Nashville, Tennessee 37203
(615) 985-8205
alex@litson.co
zack@litson.co
*Counsel for Defendant-Appellant*

March 13, 2025

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), the following people and entities have an interest in the outcome of this appeal:

| | |
|---|---|
| Anand, Honorable Justin S. | Regions Bank (RF) |
| Anulewicz, Christopher S. | RES-GA (Integrity/Haven) |
| Buchanan, Ryan K. | Ross, Eleanor L. |
| Candence Bank (BCB) (CADE) | Samuel, Donald F. |
| Chrisley, Julie | Security Bank (SECB) |
| Chrisley, M. Todd | Sistla, Alex R. |
| Clarkson, John T. | Sneed, Sekret T. |
| Erskine, Kurt R. | Sommerfeld, Lawrence R. |
| Georgia Department of Revenue | SouthState (Midtown) (SSB) |
| Griffin, Daniel P. | Sponseller, Alex F. |
| Jacobs, Julie A. | Stearns Bank (ABT) (SFSI) |
| Jones, Vivieon K. | Synovus, Bank (AFBT) (SNV) |
| Krepp, Thomas J. | Tarantino, Peter |
| Lawson, Zachary C. | Thompson, Brenton |
| Leach, Arthur W. | Truist (Haven) (TFC) |
| Little, J. Alex | United Community Bank (UCBI) |
| Morris, Bruce H. | United States of America |
| Pak, Byung J. | Vey, Alexander C. |
| Peters, Annalise K. | Why, John J. V. |
| Ramey, E. Travis | Wilson, Laurabeth |

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PERSONS ........................................... ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................... iv

ARGUMENT ............................................................................................ 1

    I.    The Government Has Not Presented Facts to Overcome the Presumption of Vindictiveness ................................................. 2

    II.    Even Absent the Presumption, the Record Establishes Actual Bias ............................................................................................ 6

    III.    Reassignment is the Appropriate Remedy ……………………….10

CONCLUSION ...................................................................................... 11

CERTIFICATE OF COMPLIANCE ..................................................... 12

CERTIFICATE OF SERVICE ……………………………………………13

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE NO.**

*Alabama v.* Smith,
   490 U.S. 794 (1989) ....................................................................................... 3

*North Carolina v. Pearce,*
   395 U.S. 711 (1969) ............................................................................... *passim*

*Offutt v. United States,*
   348 U.S. 11 (1954) ......................................................................................... 9

*United States v. Singletary,*
   75 F.4th 416 (4th Cir.) ................................................................................... 3

*United States v. Torkington,*
   874 F.2d 1441 (11th Cir. 1989) .............................................................. *passim*

*United States v. Chang,*
   121 F.4th 1044 (4th Cir. 2024) ...................................................................... 3

*United States v. Mazzaferro,*
   865 F.2d 450 (1st Cir. 1989) ........................................................................ 11

*United States v. Porraz,*
   943 F.3d 1099 (7th Cir. 2019) ....................................................................... 8

*United States v. Resendez-Mendez,*
   251 F.3d 514 (5th Cir. 2001) ......................................................................... 2

*Wasman v. United States,*
   468 U.S. 559 (1984) ....................................................................................... 6

## ARGUMENT

Following Mrs. Chrisley's successful appeal, the district court imposed a harsher supervised release term without explanation, triggering the presumption of vindictiveness established in *North Carolina v. Pearce,* 395 U.S. 711 (1969). Rather than meeting its burden to provide objective, non-vindictive reasons for this increased sentence, the government attempts to recharacterize the issue as merely an inadvertent statutory maximum violation deserving only limited remand.

Beyond this presumptive vindictiveness, the record also demonstrates actual bias. Most troublingly, the government takes the constitutionally untenable position that the sentencing court could properly consider Mrs. Chrisley's daughter's protected First Amendment expression—specifically, Savannah Chrisley's public criticism of the court at the Republican National Convention—when determining Mrs. Chrisley's sentence. This position would violate due process and create an unprecedented and impermissible chilling effect on family members' free speech rights.

The confluence of factors in this case creates an impression of judicial retaliation. Despite acknowledging that the sentencing factors "had not changed" since the original sentencing, and despite Mrs. Chrisley's exemplary prison record and significantly reduced Guidelines range, the court refused any downward variance while expressing displeasure with Savannah's public statements. This sequence—a successful appeal, followed by judicial displeasure over public criticism, culminating in an increased sentence without objective justification—presents compelling evidence of vindictiveness requiring reassignment under the *Torkington* factors.

Because both presumptive and actual vindictiveness are established, resentencing before a different judge is the only appropriate remedy to ensure the reality and appearance of justice.

## I. The Government Has Not Presented Facts to Overcome the Presumption of Vindictiveness.

Mrs. Chrisley's argument is straightforward. The sentencing court rendered a harsher sentence after she successfully appealed her original sentence. She is therefore entitled to a presumption that the sentence is vindictive, requiring the government to provide objective, non-vindictive reasons for the harsher sentence. The constitutional protection against vindictiveness is not merely aspirational—it imposes concrete burdens on the government once a presumption attaches. "Deference . . . owe[d] to district courts' sentencing is erased by the *Pearce* presumption when a harsher sentence is imposed on resentencing, and the sentencing court *must* rebut the presumption of vindictiveness with some objective reason for its reassessment." *United States v. Resendez-Mendez*, 251 F.3d 514, 517 (5th Cir. 2001) (emphasis added).

The facts of the record satisfy the bright line standard established in *Pearce* for finding a presumption of vindictiveness: (1) the sentencing judge "impose[d] a more severe sentence" upon resentencing; and (2) no non-vindictive reasons for doing so "affirmatively appear" in the record. *See Pearce*, 395 U.S. at 726. This standard applies to both the term of imprisonment as well as to the term of supervised release.

2

(Doc. 16 at 25.)[1] As the Fourth Circuit recently emphasized, when "the same judge, *in the same posture*," imposes a harsher sentence "following a successful appeal," the "presumption of vindictiveness applies *to any unexplained increase* in [the defendant's] sentence." *United States v. Chang*, 121 F.4th 1044, 1048 (4th Cir. 2024) (citing *Singletary*, 75 F.4th at 425 (emphasis added) (citing *Smith*, 490 U.S. at 802, 109 S.Ct. 2201)).

Rather than attempting to meet its burden, the government ignores the vindictiveness presumption almost entirely. It accuses Mrs. Chrisley of "misconstru[ing] and overstat[ing] the record" (Gov't Br. at 32), but then pivots to focus on a separate issue—that the supervised release term exceeds the statutory maximum on two counts—which Mrs. Chrisley never even raised. The government concedes this plain error and requests a limited remand to the same judge to address what it characterizes as an oversight. (*Id.* at 27-29.) This sleight of hand is designed to secure a limited remand while avoiding the legal consequence of vindictiveness: resentencing before a different judge.

But the government's strategy fails to address the actual issue raised in this appeal: that Mrs. Chrisley received a retaliatory sentence following her successful appeal. The presumption of vindictiveness cannot be overcome by merely assuming the mistake was inadvertent. Such a post-hoc rationalization would eviscerate the protections established in *Pearce*, allowing courts to impose harsher sentences after

---

[1] Page numbers in the record citations refer to the file-stamped page numbers at the top of each page.

successful appeals without explanation, only to later claim oversight when challenged. The presumption exists precisely because actual vindictiveness can be difficult to prove directly—which is why *Pearce* shifts the burden to the government to provide objective, non-vindictive reasons for the harsher sentence, not retrospective assumptions of inadvertence.

Moreover, the government's "inadvertence" explanation remains unpersuasive when examined against the record. The district court stated its intention that the "sentence will not change." (Doc. 445 at 34.) But it is at best unclear whether this statement referred to the entirety of the sentence or merely the term of incarceration—the latter being the sole focus of both parties' briefing and argument at resentencing. Neither party raised or addressed supervised release in their sentencing memoranda or at the hearing. (Docs. 441; 443; 445.) In this context, the court's statement that the "sentence will not change" could just as readily have referred only to the custodial term, while deliberately increasing the supervised release term.

In addition, the court's precise articulation of the supervised release term further belies any claim of inadvertence. When pronouncing the sentence, the court specifically stated: "Upon your release from imprisonment, you shall be placed on supervised release for five years on counts one through seven, and 12. Also three years on counts eight and nine. All such terms to run concurrent." (Doc. 445 at 35.) This careful distinction between counts—prescribing five years for some and three years for others—demonstrates deliberate consideration rather than mere oversight.

4

This differentiation in the court's pronouncement is wholly inconsistent with the government's post-hoc characterization of simple inadvertence.

The government's own brief undermines its inadvertence claim. Rather than standing firmly by its tenuous claim that the increased term was merely accidental, the government suggests the district court could, on remand, "explain its reasoning for the increased term." (Gov't Br. at 32.) This proposal presupposes there might have been "reasoning" behind the increase—a concession at odds with the government's principal claim of inadvertence. The government thus tacitly acknowledges what the record demonstrates: the increased sentence reflected deliberate judicial action, not mere oversight.

If the court intended to impose precisely the same sentence as before, it could have simply referred to the original judgment or stated "three years of supervised release," as it had done in the original sentencing. Instead, the court specifically pronounced "five years" of supervised release. When Mrs. Chrisley's counsel objected to the sentence as "retaliatory based on a successful appeal" (Doc. 445 at 37), the court did not respond by acknowledging any mistake in the supervised release term or by clarifying that it had not changed the sentence length. This contemporaneous exchange further undermines the government's post-hoc characterization of inadvertence.[2]

---

[2] This exchange also rebuts the government's claim that Mrs. Chrisley failed to object to the "harsher sentence." (Gov't Br. at 30.) Counsel expressly objected to the sentence as "retaliatory based on a successful appeal" and specifically objected to the court's consideration of Savannah's statements. (Doc. 445 at 37.) These

5

No non-vindictive reasons appear in the record, and correction of what the government characterizes as an "inadvertent" mistake upon limited remand cannot overcome the presumption of vindictiveness that is clearly established here. Unlike a true clerical error—where the written judgment differs from the court's oral pronouncement—the issue here is substantive. The judgment forms precisely match the court's oral pronouncement of a five-year supervised release term. (Doc. 444 at 4.) The government's failure to rebut the presumption with objective evidence is, in itself, grounds for resentencing before a different judge.

## II.     Even Absent the Presumption, the Record Establishes Actual Bias.

Even if the presumption of vindictiveness does not apply, the defendant is entitled to resentencing before a different judge where the record shows actual vindictiveness. *Wasman v. United States*, 468 U.S. 559, 569 (1984). While proving a judge's subjective intent is inherently difficult—which is precisely why the *Pearce* presumption exists—the circumstances surrounding Mrs. Chrisley's resentencing present one of those rare cases where the record demonstrates actual vindictiveness with remarkable clarity.

The government acknowledges that Mrs. Chrisley's daughter, Savannah Chrisley, publicly criticized the court's handling of her parents' case in a speech at the Republican National Convention and on her podcast. (Gov't Br. at 21 n.3.) And the government does not contest that the district court took issue with these

---

contemporaneous objections challenged both the vindictive nature of the sentence and the improper factors considered—precisely the issues now before this Court.

6

statements just before imposing Mrs. Chrisley's sentence. Instead, the government offers the extraordinary proposition that these statements were properly considered at sentencing, suggesting that "the district court was permitted to consider anything in the public record at sentencing." (Gov't Br. at 24.) The government says this is true "particularly where this was information that Chrisley's family chose to publish." (*Id.* at 33-34.)

This position is both legally untenable and constitutionally troubling.[3] While sentencing courts enjoy broad discretion in the information they may consider, that discretion is not unlimited. The Supreme Court has never sanctioned consideration of a family member's protected First Amendment expression as a factor in imposing a criminal sentence. To accept the government's position would create a chilling effect on the exercise of constitutional rights by defendants' family members—a result wholly inconsistent with our constitutional tradition.

The government faults Mrs. Chrisley for not citing cases specifically prohibiting courts from considering family members' protected speech when sentencing defendants. But this absence of precedent underscores, rather than undermines, Mrs. Chrisley's position. Courts have never needed to announce that defendants cannot be punished for their family members' protected expression precisely because the constitutional principles involved—due process and free

---

[3] The government notes that information regarding Savannah's statements was "not *ex parte*." (Gov't Br. at 32.) While this is correct, the constitutional infirmity lies not in how the court learned of the family member's speech, but in holding that protected speech against the defendant at sentencing.

7

speech—are so fundamental to our constitutional order. One would similarly find no cases explicitly holding that a judge cannot impose a lighter sentence because a defendant's relative praised the judge—a holding that the government would no doubt (hypocritically) endorse. The absence of such precedent reflects not a gap in the law, but rather the obvious constitutional boundary that courts have intuitively respected. To state the obvious: A defendant cannot be punished for a family member's lawful conduct. *See, e.g.*, *United States v. Porraz*, 943 F.3d 1099, 1103 (7th Cir. 2019) (holding that defendants can only be held accountable for the conduct of others in the context of a jointly undertaken criminal conspiracy). And federal courts cannot reprimand disfavored speech by punishing family members. The government's position would toss us into uncharted and constitutionally perilous territory, where defendants become hostages to their relatives' exercise of First Amendment rights.

The government alternatively argues that even though the sentencing court was permitted to hold Savannah's statements against her mother at sentencing, the court did not consider it because it said it did not after defense counsel raised an objection to the retaliatory sentence. It points to the district court's post-objection statement that it "did not consider any podcasts or anything in terms of the sentence." (Doc. 445 at 37.) This post-hoc disavowal cannot erase what transpired minutes earlier in the same proceeding.

Here, the reasonable likelihood of vindictiveness is apparent. At resentencing, the Guidelines range had been reduced based on Mrs. Chrisley's successful appeal, and the court explicitly acknowledged that "none" of the factors it considered at the

8

original sentencing "has changed." (*Id.* at 34.) Yet while Mrs. Chrisley presented new facts that weighed positively in her favor—including her exemplary prison record and the significantly reduced Guidelines range—the court refused to grant any downward variance and instead imposed a harsher sentence.

The record is devoid of any explanation for this incongruity. The court does not explain how the same factors that "did not change" could warrant a downward variance from the original Guidelines range but not from the newly reduced range. Nor does it explain why the two-level reduction for being a zero-point offender merited no adjustment. What the court did take time to address, however, was its displeasure with Savannah Chrisley's public statements. And even if the court did not punish Mrs. Chrisley for her daughter's public statements, the court's improper comments toward Savannah just before rendering the sentence would lead any reasonable person with knowledge of all the facts to question the judge's impartiality. This is enough to warrant reassignment. *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (citing *Offutt v. United States*, 348 U.S. 11 (1954) (Court remanded case with direction to reassign to different district judge because trial judge had "failed to represent the impersonal authority of law.").

This sequence of events—(1) a successful appeal, (2) expression of judicial displeasure with public criticism, and (3) imposition of a harsher sentence without objective justification—creates the appearance of actual vindictiveness. And the government's attempt to dismiss these facts as "inadvertent" error simply cannot withstand scrutiny. Because the evidence on record establishes both the presumption

9

of vindictiveness and actual vindictiveness, remand is warranted before a new judge who can consider the case based solely on the record, the law, and proper procedure, free from any hint of bias or vindictiveness.

### III. Reassignment Is the Appropriate Remedy.

The government fundamentally mischaracterizes this case as a mere statutory maximum violation remediable through limited remand. This characterization fails to address Mrs. Chrisley's genuine vindictiveness claim and sidesteps the proper remedy for vindictive sentencing: reassignment to a different judge.

Both parties apply the *Torkington* factors to determine whether reassignment is warranted: (1) whether the original judge would struggle to set aside previous views and findings; (2) whether reassignment is necessary to preserve the appearance of justice; and (3) whether reassignment would create waste and duplication disproportionate to its benefits. *Torkington*, 874 F.2d at 1447.

The government's opposition to reassignment rests primarily on its assertion that the record lacks evidence of vindictiveness. As Mrs. Chrisley has consistently demonstrated, however, the record clearly establishes vindictiveness.

Importantly, the remedy for a vindictive sentence differs from that for an inadvertent statutory maximum violation. When vindictiveness follows a successful appeal, reassignment becomes necessary to ensure both the reality and appearance of justice. The statutory maximum violation merely represents a symptom of the underlying vindictiveness rather than the core issue requiring remedy.

10

The government further argues that this Court should dismiss the clearly documented facts in the record and characterize the retaliatory sentence as a "likely . . . oversight the parties failed to timely appreciate." (Doc. 445 at 29.) This grossly understates the fundamental rights at stake and diminishes Mrs. Chrisley's position as a defendant who immediately recognized and objected to the increased sentence upon its pronouncement.

Reassignment is warranted "where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public." *Torkington*, 874 F.2d at 1446. Any reasonable observer would conclude that the *Pearce* standard for presumption of vindictiveness has been satisfied. Moreover, the record reveals strong indications of actual vindictiveness, evidenced by the court's persistent focus on Savannah's public comments and reluctance to grant a downward variance corresponding to the adjusted guidelines. Under these circumstances, "the appearance of retaliation" necessitates "remand[] for resentencing by a different judge." *United States v. Mazzaferro*, 865 F.2d 450, 460 (1st Cir. 1989).

## CONCLUSION

For the foregoing reasons, and those stated in Mrs. Chrisley's opening brief, this Court should vacate her sentence and remand for resentencing before a different district judge.

Respectfully submitted,

By: */s/ J. Alex Little*
J. ALEX LITTLE (TN BPR # 029858)
ZACK C. LAWSON (TN BPR # 036092)
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
*Attorneys for Julie Chrisley*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND STYLE REQUIREMENTS

This document contains complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 2,629 words according to the Microsoft Word word processing program, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced serif typeface, Century Schoolbook, at a font-size of 14.

By: /s/ J. Alex Little
J. ALEX LITTLE
*Counsel for Appellant*

Dated: March 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I served this brief on all counsel of record through the Court's CM/ECF system on March 13, 2025.

By: /s/ J. Alex Little
_____
J. ALEX LITTLE
*Counsel for Appellant*

14